**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>v.<br><br>Arturo Ventura Bandin,<br><br>              Defendant. | No. CR-13-00288-001-PHX-DGC<br><br>**ORDER** |

Defendant has filed a motion to suppress evidence. Doc. 37. The United States has responded. Doc. 45. No party has requested oral argument. For the reasons stated herein, the motion will be denied.

**I.     Background.**

On February 22, 2011, at approximately 2:17 p.m., Defendant was driving northbound on Horseshoe Road with a passenger. Ahead of Defendant's car was a yellow road grader, also proceeding northbound. The road grader pulled to the right of the road to let Defendant pass and came to a stop. Defendant struck the rear of the grader. The passenger in Defendant's car sustained fatal injuries from the crash.

Immediately after the collision, Defendant exited the car. Defendant asked the driver of the grader if he could use his cell phone. After Defendant called his father, he asked the other driver to call the paramedics. Law enforcement and paramedics soon arrived on the scene. When questioned, Defendant could not recall what happened, but admitted to being the driver of the car and to having consumed a six-pack of beer. The

passenger was airlifted from the scene to Maricopa Medical Center ("MMC") where she was later pronounced dead, and Defendant was transported by car to MMC, even though he showed no visible signs of injury.

Upon arriving at MMC, Defendant signed a Conditions of Admission form and was admitted to the hospital's trauma center. He complained only of hip pain and showed no signs of injury otherwise, and yet, according to the hospital report, Defendant underwent a series of treatments. These included receiving a CT scan, x-rays of his hip, pelvis, chest, and cervical spine, and a series of tests that included a Trauma Panel, UA, UDS and Blood Alcohol Level tests. Doc. 45, Ex. 1. Defendant's blood was drawn for these tests at 3:36 p.m.

At 3:48 p.m., Officer Parsons submitted a form entitled "Blood Sample Request by Law Enforcement" to the hospital staff, requesting the Defendant's blood vials "if a blood sample is or has been taken from the above-named patient for any reason." Doc. 45, Ex. 3. Those vials were tested by the Arizona Department of Public Safety on March 18, 2011, and revealed a blood alcohol content of 0.188%.

**II.   Analysis.**

A blood draw is a bodily invasion that constitutes a search under the Fourth Amendment, *Schmerber v. California*, 384 U.S. 757, 767-71 (1996), and the government does not dispute that Defendant's blood was drawn without a warrant and without Defendant's consent. Nevertheless, "[t]he fourth amendment will only apply to *governmental conduct*." *United States v. Attson*, 900 F.2d 1427, 1429 (9th Cir. 1990) (emphasis added); *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'"). Only if a private party acts as an instrument or agent of the government in conducting a search or seizure will the Fourth Amendment provide protection. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989);

1  *Corngold v. United States*, 367 F.2d 1, 5 (9th Cir. 1966) (search by a private person is illegal where they "participated in the search solely to serve the purposes of the government"). Additionally, "police cannot acquiesce to or indirectly encourage a private person's search for incriminating evidence without implicating the Fourth Amendment." *United States v. Reed*, 15 F.3d 928, 933 (9th Cir. 1994). "The defendant has the burden of showing government action." *United States v. Reed*, 15 F.3d 928, 930-31 (9th Cir. 1994) (citing *United States v. Gumerlock,* 590 F.2d 794 (9th Cir.) (en banc), *cert. denied,* 441 U.S. 948 (1979)).

Here, the blood draw was done by a private party – MMC – and Defendant has not argued that the police asked, encouraged, or even acquiesced in the blood draw. In fact, Officer Parsons did not request a blood sample until after the blood had been drawn, a fact that weighs against any inference that Officer Parsons somehow encouraged MMC to draw Defendant's blood.

Defendant argues that "[t]here can only be one reason blood was drawn from the defendant and that is because it was suspected that he was involved in an alcohol related accident." Doc. 37 at 3. Defendant offers no support for this statement. Additionally, Defendant offers no argument or authority as to why such a suspicion by the treating medical staff would be problematic. Testing a patient's blood alcohol level may have legitimate medical purposes. For example, "the presence of alcohol in [a patient's] body might mask symptoms of serious pain and might be important in determining the sorts of medicines that could be administered." *Attson*, 900 F.2d at 1429. Defendant had just been involved in a fatal vehicle collision, but he complained only of hip pain. It would not be unreasonable for a medical team treating him to seek to discern whether symptoms of more serious injuries had been masked by the presence of alcohol. Additionally, the government argues that MMC's standard policy "required hospital personnel to draw defendant's blood as part of a series of routine trauma tests." Doc. 45 at 7.

The Court concludes that Defendant has not met his burden of showing that MMC acted as an agent of the government, and the Fourth Amendment does not protect against

1. a search or seizure by a non-government actor.  Defendant's motion to suppress the blood sample (Doc. 37) is **denied**.
2. Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 11/13/2013.
3. Dated this 18th day of February, 2014.

_____
David G. Campbell
United States District Judge